**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

J.P., a minor, <u>et</u> <u>al.</u>,

    Plaintiffs,

v.                                        Civil Action No. 3:06cv028

COUNTY SCHOOL BOARD OF
HANOVER COUNTY, VIRGINIA,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the Plaintiffs' Statement of Expenses for Reimbursement (Docket No. 57) and Amended Petition for Attorneys' Fees and Costs (Docket No. 66).  For the reasons set forth below, the Plaintiffs' requests for reimbursement and for attorneys' fees and costs are each granted, in part.

**PROCEDURAL POSTURE**

The Plaintiffs in this matter are JP, a thirteen year old autistic boy, and his parents.  On August 28, 2006, the Court held that the 2005 individual education plan ("IEP") provided for JP by the Hanover County Public Schools ("HCPS") failed to provide an appropriate education for JP as required by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 <u>et seq.</u> (2000). <u>See</u> <u>J.P. ex rel. Peterson v. County Sch. Bd. of Hanover County,</u> <u>Va.</u>, 447 F. Supp. 2d 553 (E.D. Va. 2006).  Pursuant to IDEA, 20 U.S.C. §§ 1412(a)(10)(C)(ii) and 1415(i)(2)(B)(iii), the Court also

held that the Plaintiffs, as the prevailing party, were entitled to the reasonable costs incurred by the Plaintiffs in educating JP in a private school and any related services that would have been covered under the IDEA had HCPS provided JP with an appropriate education during the 2005-2006 school year. Id. at 590-91. The Court further determined that, under IDEA, 20 U.S.C. § 1415(i)(3)(B), the Plaintiffs were entitled to reasonable attorney's fees. Id. at 591.

Thereafter, Plaintiffs submitted a Statement of Expenses for Reimbursement on September 7, 2007 (Docket No. 57). The Statement seeks reimbursement for various costs associated with JP's education at the Dominion School for Autism ("Dominion") during the 2005-2006 school year. On September 14, 2006, Plaintiffs also submitted a Petition for Attorneys' Fees and Costs (Docket No. 59). The Court concluded that the documentation provided with the Plaintiffs' Petition for Attorneys' Fees and Costs was inadequate and ordered (Docket No. 65) the Plaintiffs to file an amended petition that would enable the Court to assess whether the sums sought were reasonable under the IDEA and governing decisional law. Plaintiffs submitted an Amended Petition for Attorneys' Fees and Costs on November 16, 2006 (Docket No. 66). The Defendant objected to the fee request, as amended.

### STATEMENT OF FACTS

Because the Court's experience with this action will inform its analysis, a brief review of the facts is in order.  JP's family moved to Virginia in late 2000, and JP began school as a first grader at Battlefield Park Elementary School in Hanover County in January 2001.  JP stayed in HCPS's special education program from January 2001 until May 7, 2003.  In May 2003, JP's parents removed him from HCPS and placed him in the Spiritos School ("Spiritos"), a private specialty school for children with autism, because his parents were concerned that JP was not making adequate progress at the public school.  JP made significant gains at Spiritos during the following year, but JP's parents wanted him to succeed in the public school system and took steps to re-enroll him in HCPS for the 2004-2005 school year.

As provided by the IDEA, an IEP team, including JP's parents, convened in the summer of 2004 to design an appropriate IEP for JP at HCPS.  The product of those meetings was an IEP signed on August 17, 2004 ("2004 IEP") which placed JP in a special education program at the Rural Point Elementary School.  Because of JP's success at Spiritos, the parents sought to obtain, and, in fact, were promised, an educational program at Rural Point that would use many of the same educational methods used at Spiritos.

JP began at Rural Point in September 2004 under the curriculum set forth in the 2004 IEP, but, throughout the school year, JP's

3

parents had concerns about JP's progress.  Indeed, despite various requests of the school to assess JP's progress and to adjust his curriculum, the parents ultimately came to the view that JP was actually regressing rather than progressing, and so informed HCPS. HCPS contended, to the contrary, that JP was making sufficient progress.  By June 2005, JP's parents and HCPS had vastly different views on whether the 2004 IEP had provided JP with educational benefit and, when HCPS proposed an IEP for 2005-2006 ("2005 IEP") that was substantially the same as the 2004 IEP, JP's parents asked HCPS to provide JP with a private placement at public expense at a local specialty school such as Spiritos, where JP formerly had great success.   HCPS refused that request, and JP's parents subsequently rejected the proposed IEP for the 2005-2006 school year.

Thereafter, the parents, pursuant to IDEA, filed a request with the State for a due process hearing to challenge the adequacy of the 2004 and 2005 IEPs before an impartial administrative hearing officer.  The due process hearing was held on July 25, and September 29 and 30, 2005.[1]   The State Hearing Officer held, in a written decision dated October 14, 2005, that JP had made more than minimal progress during the 2004-2005 school year, and that both the 2004 and 2005 IEPs were appropriate under the IDEA and

---

[1] The delay between the sessions of the due process hearings resulted because the parents changed counsel after the July 25 session.

governing law.  The practical effect of that ruling was that JP's parents would not be entitled to reimbursement for enrolling JP in Dominion, and, if they re-enrolled JP at HCPS, could not demand or expect an IEP that varied from the one they had rejected several months prior.  Therefore, on January 11, 2005, pursuant to the IDEA, JP's parents filed a seven-count complaint in this Court seeking a review and reversal of the State Hearing Officer's ruling.  Although the complaint contained seven counts, the parents agreed that each of the counts alleged in the complaint related solely to the question whether the June 2005 IEP satisfied the requirements of IDEA and the relevant decisional law, and whether the parents were entitled to reimbursement for the cost of educating JP at Dominion during the 2005-2006 school year.  After extensive hearings and briefing, the Court concluded:  that the 2005 IEP did not provide an appropriate education as required by the IDEA; that Dominion was an appropriate placement for JP; that HCPS must reimburse JP's parents for "the reasonable costs of educating JP at the Dominion School and any related services and accommodations that would have been covered under the IDEA had HCPS provided JP with an appropriate education during the 2005-2006 school year;" and that JP's parents were "entitled to reasonable attorney's fees as permitted by the IDEA and governing decisional law."  J.P., 447 F. Supp. at 591.

5

**DISCUSSION**

## I.  Attorney's Fees

Under IDEA, 20 U.S.C. § 1415(i)(3)(B), the Court "may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  The amount of that award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  Pursuant to that direction, and under the basic principles applicable to the award of attorney's fees in IDEA and civil rights cases generally, the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also A.D. ex rel. S.D. v. Bd. of Pub. Ed. of the City of Asheville, 99 F. Supp. 2d 683, 687 (W.D.N.C. 1999) (applying Hensley and related cases in the IDEA context).  The result of that calculation is known as the lodestar figure.  If properly computed, "the lodestar figure will normally reflect a reasonable fee."  A.D., 99 F. Supp. 2d at 687 (citation omitted).  Before arriving at the lodestar figure, however, a court must first determine the appropriate hourly rate and number of hours used to calculate the figure.  Those two variables, as well as the lodestar figure itself, are assessed in light of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714,

717-719 (5th Cir. 1974).  E.E.O.C. v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990).

The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-719.  Using those factors, and other relevant decisional law, as a guide, the Court turns first to the determination of a reasonable hourly rate.

**A.   Reasonable Hourly Rate**

The IDEA instructs that a reasonable rate is the one "prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  For purposes of that provision, the relevant "community" is "ordinarily the community in which the court where the action is prosecuted sits."  A.D., 99 F. Supp. 2d at 688 (quoting Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994)).  The relevant community, therefore, is Richmond,

Virginia and the Eastern District of Virginia.  See Saleh v. Moore, 95 F. Supp. 2d 555, 583 (E.D. Va. 2000).  The parties agree that the Plaintiffs may establish the market rate for similar services in Richmond "through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market."  Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987).  The market rate established by such evidence may still be adjusted in light of relevant Johnson factors.

Here, in addition to submitting an affidavit from Plaintiff's counsel, the Plaintiffs submitted affidavits from four attorneys who specialize in special education law, including two solo practitioners, a law school professor, and a government attorney, each of whom places the prevailing market rate for special education legal services at $350 per hour.  (See Volenik Aff. 1-2; Wright Aff. 1; Martinis Aff. 1; England Aff. 1-2.)  Their assessments of the prevailing market rate are based on fees they themselves have charged, fees they have submitted to courts in similar cases in this district, and their extensive experience in special education litigation in the Richmond area.[2]  The market

---

[2] The Defendant argues that the affidavits are insufficient because they are "[g]eneralized and conclusory 'information and belief' affidavits from friendly attorneys presenting a wide range

rate reflected in those affidavits comports with the Court's own experience with legal fees in this community generally, and in cases of this sort for counsel with experience in the somewhat complicated area of IDEA law.

The Defendant, in response, has submitted two affidavits, the first of which states a billing rate of between $250 and $350 per hour, which is generally in line with the rate established by the Plaintiffs, and the second of which states rates between $180 and $240 per hour.  (See Mason Aff. 1; Cafferky Aff. 1-2.)  While the second of the Defendant's affidavits states a rate much lower than the one stated in the other five affidavits, the Court remains satisfied that $350 per hour is the prevailing market rate in IDEA cases for plaintiff's attorneys with skill and experience similar to the plaintiffs' counsel here.[3]

_____

of hourly rates."  (Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 2. (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C. Cir. 1982)).)  To the contrary, however, each of the affidavits states the same prevailing hourly rate, and two of the affidavits are based on the rate charged by the affiant or the rate submitted by the affiant for a fee award in this district.  The others are based on the affiants' personal knowledge of the rates charged by similarly-qualified counsel in similar cases.  Even under the decisional law cited by the Defendant, the Plaintiffs' affidavits would be sufficient.  See Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1325-26 (acceptable affidavits may "state that the stated rate is based on the affiant's personal knowledge about specific rates charged by other lawyers or rates for similar litigation").

[3] The second affidavit submitted by the Defendant is from an attorney who appears, based on a review of the cases in which he has participated, primarily, or exclusively, to represent school boards.  Therefore, the rates he charges his clients may not be an

Even though Plaintiffs have established the rate at $350 per hour for counsel experienced in IDEA law in this community, they have requested reimbursement only at $300 per hour for lead counsel, a partner in a small law firm. The requested rate for the associates who worked on the case is $230 per hour. The request seeks reimbursement for paralegal work at $105 per hour. (See Br. in Supp. of Pls.' Am. Pet. for Att'ys' Fees and Costs at 11.) Plaintiffs' counsel posit that they seek slightly reduced rates because they are relatively inexperienced in this particular type of special education case, even though they have a good deal of experience in special education matters and in litigation generally. (See Reply Br. to Def.'s Resp. to Pls.' Am. Pet. for Att'ys' Fees and Costs 4-7.)

The Court generally agrees with this sensible reduction in requested fees. The Johnson factors most relevant to determining the reasonable hourly rate here are: (3) the skill requisite to perform the legal service properly; (5) the customary fee; (9) the experience, reputation, and ability of the attorney; and (12) the awards in similar cases. See A.D., 99 F. Supp. 2d at 688. Here, neither party cited a specific case in which a particular rate was

---

accurate guide as to the prevailing rates for plaintiff's attorneys. See A.D., 99 F. Supp. 2d at 690. To the extent that his affidavit supports a lower rate for plaintiff's attorneys, it is based only on the affiant's personal observations and experience, which makes his view no more authoritative than the views expressed in the Plaintiffs' affidavits.

awarded in this community on facts similar to those here (<u>Johnson</u> factor 12), but Plaintiffs have established the customary fee (<u>Johnson</u> factor 5), and the Court believes that the requested rates are generally appropriate given the skill required to prosecute an IDEA case like this (<u>Johnson</u> factor 3) and the experience and ability displayed by Plaintiffs' counsel (<u>Johnson</u> factor 9).  In fact, Plaintiffs' counsel exhibited a good deal of skill in taking on this complicated matter in the middle of the administrative hearing and subsequently presenting it successfully in this court. However, it is clear that counsel also lacked experience in this particular type of IDEA case.  Therefore, $300 per hour for lead counsel, Mr. Strother, appropriately accounts both for his relative inexperience with IDEA cases and his relatively high level of skill, as evidenced by the manner in which the case was presented at the administrative hearing and in this court, and by the outcome of this action (<u>Johnson</u> factor 8).

The primary associate on this case, Ms. Mathis, had only three years experience as an attorney when this matter went to trial and, considering <u>Johnson</u> factor 9, an hourly rate of $200 is more appropriate than the requested rate of $230.  This is no commentary on her skill or performance with respect to this particular matter, but instead reflects the Court's experience with billing rates in the Richmond area for young attorneys who have been practicing law for as long as Mathis.  The Plaintiffs have provided the Court with

11

no background on another associate, Robert J. Allen, so it is impossible for the Court to assess the requested rate in light of Allen's experience (Johnson factor 9).  Accordingly, it is not possible to base any part of the award on services which he performed.

Finally, the Defendant has not complained about the fee requested for Plaintiffs' paralegal work, $105 per hour.  For that reason, and because that rate comports with rates approved in other cases for paralegal fees in the Richmond area, that component of the fee predicate has been established.

In sum, the Court finds that in light of the relevant <u>Johnson</u> factors, $300 per hour for Strother, $200 per hour for Mathis, and $105 per hour for paralegal services reflects the general community rate, as well as the skill and experience of those professionals while, at the same time, appropriately accounting for their relative inexperience with IDEA actions such as this.

## B.  Number Of Hours Reasonably Expended

Next, it is necessary to review the second lodestar multiplier: the number of hours reasonably expended on behalf of the Plaintiffs.  Under the IDEA, the Court is obligated to reduce a fee award if "the time spent and legal services furnished were excessive."  20 U.S.C. § 1415(i)(3)(F)(iii).  For that reason, "[t]he Court may not simply accept as reasonable the number of hours reported by counsel," and the fee applicant bears the burden

of providing the Court with sufficient evidence to justify its fee request.  <u>A.D.</u>, 99 F. Supp. 2d at 690.  That burden includes supplying documentation which "reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity, sufficient to permit the court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'"  <u>Guidry v. Clare</u>, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (citations and internal quotation marks omitted).

All told, the Plaintiffs' fee request represents 884.2 hours of work performed by three attorneys (although the bulk of the work was done by Strother and Mathis), and 48.5 hours of work by a paralegal.  (<u>See</u> Pls.' Am. Pet. for Att'ys' Fees and Costs Ex. 1.) As a general matter, the documentation provided by the Plaintiffs is adequate to enable the Court to determine whether the hours expended were reasonable, but the Defendant lodges several well-taken objections to the hours claimed and their documentation. Thus, it is necessary to assess the number of hours claimed in light of those objections and the relevant <u>Johnson</u> factors.

The Defendant's first objection is that the hours claimed are simply excessive.  (<u>See</u> Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 9.)  Defendant compares the number of hours claimed with the few hours spent by Plaintiffs' counsel appearing formerly on behalf of JP and his parents, and notes that Plaintiffs' counsel seems to have spent more than twenty-five hours preparing for each

hour of active representation before the Court or the Hearing Officer. (See id.) Defendant suggests that such a ratio, in and of itself, represents an excessive number of hours claimed. (See id. at 10.)

General objections of this sort are not an adequate challenge to a documented fee request. That is particularly true where, as here, the oppositional strategy of the defendant was vigorously to contest every issue.

It is not unethical for a defendant to adopt such an approach, but it must accept the consequences of taking that tack. See Saleh, 95 F. Supp. 2d at 560-61, 570 (explaining that a defendant who mounts a vigorous defense will be responsible for the costs incurred by a prevailing plaintiff in meeting that defense). In this case, the Defendant's approach made it necessary for Plaintiff's counsel to incur extensive legal fees to meet the across-the-board opposition mounted by the Defendant on the legal front and on the factual front. Having defended on that basis and lost, the Defendant now must assume responsibility for the rather extensive legal fees which its strategy of defense made necessary.[4]

Moreover, the Court's own experience in this case substantiates that it was factually and legally complicated,

---

[4] The limited time devoted by Plaintiffs' former counsel appears to account for the need to ask Strother to take over the case and certainly is not an adequate barometer for measuring the time which was appropriately devoted to the case.

largely because of the defense strategy. That strategy necessitated a great deal of legal and factual research and study by the Court, and it is unsurprising that Plaintiffs' counsel found it necessary to do the same.

Nevertheless, the hours claimed by Plaintiffs' counsel must be reduced. Defendant points out that 156.3 hours were spent on the preparation of the Complaint alone. (Id.) That amount of time is excessive. While the Complaint was factually very thorough and obviously required a great deal of time to draft, it also needlessly detailed seven separate counts which ultimately went only to a single question: whether the 2005 IEP complied with the IDEA. While the facts underlying those separate counts were critical to the Plaintiffs' success on the merits, the unnecessary recitation of the separate counts demonstrates a lack of experience that undoubtedly contributed to the excessive number of hours required to prepare the Complaint. Considering the Complaint, the law applicable to the relief it sought, and the record, the Court can justify an award of $15,000 (50 hours x $300 per hour) for preparation of the Complaint.

The Defendant also objects to "the number of hours spent in duplicative and repetitive work." (Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 12 (quoting Conklin v. Anne Arundel County Bd. of Educ., 946 F.2d 306, 316 (4th Cir. 1991)).) Most of the "duplicative" time complained of relates to the drafting of the

Complaint, which already has been addressed.  The Defendant also objects to hours claimed by Mathis for attending hearings and conference calls in which she did not actively participate.  Even if her time was "duplicative," it was not unnecessarily so.  As is obvious from the amount of documented time that Mathis devoted to key issues, she played an integral part in preparing and litigating this action.  Even though Strother did all of the speaking during the hearings and conference calls, the presence of Mathis on those occasions was far from unnecessary, and her time is appropriately counted.  The Defendant points to no authority that requires otherwise.

Moreover, after reviewing the documents submitted by Plaintiffs' counsel, the Court is not concerned about unnecessary duplication of efforts.  Strother claims nearly all of the time associated with preparing for and conducting the Administrative Hearing, and, after that hearing, delegated a significant amount of work to Mathis.  (See  Pls.' Am. Pet. for Att'ys' Fees and Costs Ex. 2.)  As the Defendant knows full well, complex legal work requires a large amount of collaboration, and simply because Mathis spent time drafting briefs does not mean that Strother is precluded from claiming any time spent on those same tasks.  In addition, proper documentation of time does not require Strother and Mathis to describe with excruciating detail which portions of a particular brief each worked on and to what extent.  The Court is satisfied

16

with the documentation provided, and, based on the hours claimed and the work recorded, as well as the Court's own knowledge of this case, the Court finds that there is no unreasonable duplicative or repetitive work for which Plaintiffs' counsel seeks compensation.

Notwithstanding that general conclusion, the Defendant rightly points out that many of the time entries provided by Plaintiffs' counsel fail to describe with particularity the tasks completed, and that many entries are "lumped." (See Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 11-12.)   The "lumping" cited by the Defendant refers to the practice of listing several tasks under a single time entry, without specifying the amount of time spent on a particular task.   Guidry, 442 F. Supp. 2d at 294.   Where "lumping" or other inadequate documentation is a problem, courts may either identify and exclude improperly documented hours or simply reduce the overall fee award "by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved."   Id.   The "lumping" in this case will require a reduction in the requested fee.

A reduced fee is in order because the improper documentation in this case presents several problems.   First, as the Defendant argues, if one of several tasks in a "lumped" entry is a task that should be excluded from this fee petition, it is impossible to know whether the time subtracted by Plaintiffs' counsel for that task accurately reflects the amount of time spent on that task.   (Def.'s

17

Resp. to Pls.' Am. Pet. for Fees and Costs at 12, 15.)  Second, some "lumped" entries include tasks which the Plaintiffs claim to have excluded but for which no time is subtracted.  (Id. at 13.) Therefore, it is impossible for the Court to assess how much time is being claimed for a task that should have been excluded. Finally, some "lumped" entries claim time for tasks, like "organize file," that might include non-recoverable administrative or clerical work.  (Id. at 14 (citing Alexander S. v. Boyd, 929 F. Supp. 925, 939-40 (D.S.C. 1995)).)  Without knowing what "organize file" means or how much time, precisely, was spent on that organization, it is impossible for the Court to know whether and how much time to exclude.  Because Plaintiffs' counsel provided documentation that is inadequate in these respects, and because, after reviewing the documentation, the Court is not concerned that these inadequacies implicate a large number of hours, the Court finds that it is appropriate to reduce the otherwise awardable fees by 10%.

The number of hours reasonably expended must also be assessed in light of the relevant Johnson factors.  Under Johnson factor 1, the time and labor reasonably required, the Court is satisfied that the number of hours claimed, minus the time excluded for the reasons cited above, is reasonable.  This was a fact-intensive case and a relatively complicated area of the law.  The time claimed by

18

Plaintiffs' counsel is quite reasonable given the Court's own experience with this case.

The second <u>Johnson</u> factor requires assessment of the novelty and difficulty of the questions posed by the action. Although the basic components of IDEA law in this case were not novel in and of themselves, the Defendant made several novel arguments. For instance, it raised a constitutional issue and several statutory arguments that were new and complex. This substantially increased the time devoted to briefing and argument and thereby increased the fees necessarily incurred by Plaintiffs.

The eighth <u>Johnson</u> factor directs the Court to consider the amount in controversy and the results obtained. The Supreme Court has stated that the "degree of success obtained" is "the most critical factor" in determining the reasonableness of the fee award. <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) (citation omitted). Here, the Plaintiffs were completely successful. Even though the Complaint contained seven counts, each went only to the single question of whether the 2005 IEP met the requirements of IDEA; and because the Court determined that the IEP did not comply with IDEA, the Plaintiffs were successful on what was all along their lone claim. While the damages recovered as a result may not be large, the attorney's fees claimed need not be strictly proportionate to the amount of damages. <u>See</u> <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986).

In sum, after considering the Defendant's objections and the relevant _Johnson_ factors, the hours claimed by Plaintiffs, when reduced as required herein, are reasonable in amount.[5]   When adjusted as outlined above, the total number of hours is 822.6. When the hours spent are multiplied by the rates approved for each attorney and paralegal, the lodestar figure is $199,510.00.

## C.  Lodestar Analysis

The Defendant urges the Court to reduce the lodestar figure because Plaintiffs' counsel offers no evidence that other employment opportunities were turned down as a result of handling this matter (_Johnson_ factor 4), because there were no unusual time constraints placed on Plaintiffs' counsel by their clients (_Johnson_ factor 7), and because this was not an undesirable case (_Johnson_ factor 10).  (Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 18-20.)   The Court agrees that Plaintiffs' counsel did not demonstrate lost work opportunities or the undesirability of this case, but the Defendant does not explain why the absence of those

---

[5] As a final note, the Court would have excluded the hours spent by Plaintiffs' counsel preparing their initial fee application, had they claimed that time.   Time spent on fee applications is properly compensable, _A.D._, 99 F. Supp. 2d at 692, but because the initial documentation was wholly inadequate,  the Court was prepared to exclude the time spent on it.   However, either because the Plaintiffs were unaware that such time may be claimed, or because they acted on their own to exclude it, none of their time entries in the category of "Briefing Following Hearings" includes time spent on a petition for attorney's fees; therefore, the Court need not exclude that time.   (_See_ Pls.' Am. Pet.  for Att'y's Fees and Costs, Ex. 12.)

factors requires the Court to reduce the lodestar figure. And, contrary to what the Defendant contends, Plaintiffs' counsel was put into a difficult situation in taking over this matter midway through the administrative hearing. While Plaintiffs' counsel was not burdened with overwhelming time constraints, they were required, in fairly short order, to master the facts and the relevant law in order to resolve this matter favorably for their clients. Thus, none of the <u>Johnson</u> factors cited by the Defendant, or any of the other <u>Johnson</u> factors, compels this Court to reduce the lodestar figure.

The Defendant offers one final argument, however, for reducing the lodestar figure. The Defendant claims that the Plaintiffs "unreasonably protracted the final resolution of the controversy," and must therefore see their attorney's fees award reduced as required by the IDEA, 20 U.S.C. § 1415(i)(3)(F)(i). (Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 20-22.) As evidence of unreasonable protraction, the Defendant submits a single letter, dated July 5, 2006, from Plaintiffs' counsel to the Defendants demanding $500,000 and placement at the Dominion School. (<u>Id.</u> Ex. E.) In response to this charge of unreasonable protraction, the Plaintiffs submit a subsequent letter, dated July 13, 2006, in which they offer to settle for placement at Dominion, tuition reimbursement, and attorney's fees. (Reply Br. to Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs Ex. 34.) The Court is not privy

21

to the settlement negotiations in this matter, but, based on the record here, it does not appear that the Plaintiffs are responsible for unreasonably protracting the final resolution of this matter, and the Court is certainly not prepared, on this record, to reduce the lodestar figure under 20 U.S.C. § 1415(i)(3)(F)(i).

Because none of the Defendant's objections requires a reduction in the lodestar figure, it remains $199,510.00. After subtracting 10% from that amount for "lumped" time entries, the overall fee award is $179,559.00.

### D. Costs

Under IDEA, 20 U.S.C. § 1415(i)(3)(B), the Plaintiffs also request $4,192.57 for costs associated with this litigation. Those costs include photocopying, facsimiles, postage, parking, travel, and service and filing fees. (Pls.' Am. Pet. for Att'y's Fees and Costs at 3.) The Defendant has only two objections to that request. First, the Defendant points out that the Plaintiffs' current request is $347.79 greater than what was requested in the original petition for costs. (Def.'s Resp. to Pls.' Am. Pet. for Fees and Costs at 16.) The additional costs are not related to the filing of this Amended Petition, and the Defendant argues that the $347.79 should be excluded because the Plaintiffs do not explain why it was not included in the original petition. (Id.) However, the Defendant does not argue that the $347.79 would have been improperly claimed had it been included in the original petition,

nor does the Defendant argue that those costs are inadequately documented now.   Because the Defendant does not explain why Plaintiffs' simple failure originally to include the $347.79 requires the Court to deny those costs as properly documented in the Amended Petition, the $347.79 will be counted.

The Defendant also argues that the Plaintiffs are not entitled to recover the $780.00 charged by Sharon England, a local special education lawyer, for meeting with Plaintiffs' counsel, reviewing the case, and reviewing drafts of motions.   (Id. at 17.)   The Defendant cites Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy, 126 S. Ct. 2455 (2006), for the proposition that expert fees may not be awarded to a prevailing party under the IDEA.   Although Murphy dealt only with non-lawyer experts, its holding might require the exclusion of England's $780.00 fee; however, it is unnecessary to reach that issue because England's fee must be excluded for other reasons.   In setting the proper hourly rates for Plaintiffs' counsel and in arriving at a reasonable number of hours expended, the Court has considered both the skill demonstrated by Plaintiffs' counsel and for their relative inexperience in this type of IDEA litigation.   Therefore, the benefit of England's counseling is already reflected in the allowed hourly rate for Strother, and it would be improper to allow it here as well. England's counseling was part of Strother's remedial IDEA

23

education, so it is a cost that he must absorb as part of his fees. Accordingly, the costs awarded are $3,412.57.

## II.  Damages

The Plaintiffs have also requested $34,345.69 in damages consisting of the cost of tuition at Dominion for the 2005-2006 school year, the cost of transporting JP to and from Dominion, and the transaction  fees, late fees, and interest payments incurred by Plaintiffs while financing JP's placement at Dominion on their credit card. (See Pls.' Statement of Expenses for Reimbursement at 1-5.)  The Defendant objects only to $6,880.79 of Plaintiffs' claim.  Specifically, the Defendant objects to paying JP's Dominion tuition and related travel expenses for July and August 2006 because, according to the Defendant, the school year ends in June. (Def.'s Resp. to Pls.' Statement of Expenses for Reimbursement at 1-2.)  The Defendant also agrees to pay only 6% interest on the Plaintiffs' credit card bills.  (Id. at 2.)  Finally, the Defendant objects to paying credit card transaction fees and late fees incurred by the Plaintiffs.  (Id. at 3.)

First, the Court will not exclude tuition or travel expenses related to JP's education at Dominion during July and August 2006. Under the IDEA, a court may order public schools to reimburse parents for the cost of enrolling their child at an appropriate private school when the court finds that the public school had not made a free appropriate public education available to that child.

24

See 20 U.S.C. §§ 1412(a)(10(C)(ii), 1415(i)(2)(B)(iii).   That statutory provision imposes no limitation on reimbursement for appropriate year-round placements.   Nevertheless, the Defendant notes that the Court's Memorandum Opinion ordered reimbursement for the cost of educating JP at Dominion during the "2005-2006 school year," and argues that, since the public school year extends only from September to June, the Court ordered only reimbursement for those months.   See J.P., 447 F. Supp. 2d at 591.   The Court intended no such result.   The Plaintiffs will be reimbursed for the full, year-round cost of tuition for, and travel to and from, the Dominion School.   See Petties v. District of Columbia, 888 F. Supp. 165, 170-71 (D.D.C. 1995) (ordering school district to reimburse parents for summer tuition at appropriate private placement that operated year-round).

Second, the Court agrees with the Defendant that the Plaintiffs are not entitled to all of the credit card interest payments they seek.   Importantly, the steep interest rates charged by the Plaintiffs' credit card company appear to be a result of late payments or other occurrences not attributable to the Defendant.   (See Def.'s Resp. to Pls.' Statement of Expenses for Reimbursement at 2.)   While the Court has broad discretion to award appropriate relief in this case, see Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15-16 (1993), the Court is not inclined to reimburse the Plaintiffs for their credit card interest payments

25

given their failure to explain why the rates of interest charged were not excessive, were unavoidable, or are otherwise justifiably charged to the Defendant.  Noting the dearth of relevant decisional law respecting this issue, the Defendant agrees to reimbursement at a rate of 6% rather than at 13.24% and 25%.  Although that level of reimbursement does not cover all of the costs actually incurred by the Plaintiffs in paying for JP's placement at Dominion, the Court believes that the rates requested by the Plaintiffs would unfairly saddle the Defendant with costs that cannot be attributed exclusively to the Defendant's failure to abide by the IDEA.[6]  (See Def.'s Resp. to Pls.' Statement of Expenses for Reimbursement at 3.)  The Plaintiffs therefore will be reimbursed for the interest on their credit card bills at a 6% annual percentage rate (APR). Moreover, because the Court will not reimburse the Plaintiffs for costs not attributable to the Defendant's actions, the Court also denies the Plaintiffs' request to be reimbursed for credit card late fees.

Finally, despite the Defendant's unsupported objection, the Plaintiffs will be reimbursed for the $50 transaction fees charged by Dominion for payments made with a credit card.  (See Pls.' Statement of Expenses for Reimbursement at 1.)  Beginning in January 2006, the Plaintiffs were no longer able to pay cash for

---

[6] In their Reply, the Plaintiffs failed to justify the requested interest rates even though they knew those rates had been challenged as excessive by the Defendant in its Response.

26

JP's tuition at Dominion, and were forced to finance his education with a credit card. (See id. at 3.) Therefore, these transaction fees will be reimbursed because they were not expenses that could have been avoided by the Plaintiffs, unlike the credit card late fees and, arguably, the high credit card interest rates.

To summarize, the Plaintiffs will be reimbursed for the full, year-round cost of educating JP at Dominion, including credit card transaction fees charged by Dominion, but will not be reimbursed for credit card late fees or for credit card interest charges that the Plaintiffs did not adequately justify. The expenses for reimbursement total $33,187.90.

**CONCLUSION**

For the foregoing reasons, the Defendant is ordered to reimburse the Plaintiffs for attorney's fees and costs totaling $182,971.57. The Defendant shall also reimburse the Plaintiffs for the expenses associated with educating JP at Dominion during the 2005-2006 school year. Those expenses total $33,187.90.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

_____/s/_____

Robert E. Payne
United States District Judge

Date: March 15, 2007
Richmond, Virginia